O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN HALIK, | Case No. SACV 07-841 DOC (RNBx) |
| Plaintiff(s), | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND SECURITY, Agency, | |
| Defendant(s). | |

_____

**I.  Background**

This cause came for trial on January 15, 2009, before the Court sitting without a jury as to Plaintiff Evelyn Halik's cause of action for wrongful termination in violation of public policy under Title VII of the Civil Rights Act of 1964, as amended. The Court, having heard the testimony and having examined the proofs offered by the respective parties, the cause having been submitted for decision, and the Court being fully advised in the premises, makes its finding of fact and conclusions of law as follows:

**II.     Findings of Fact**

1. Plaintiff Evelyn Halik ("Plaintiff" or "Halik") entered on duty as an Applications Clerk (GS-5, step 1) with United States Customs and Immigration Services ("CIS," formerly Immigration and Naturalization Service) at the California Service Center located at Laguna Niguel, Orange County, California, on May 20, 2001.

2. Plaintiff is of Filipino national origin.

3. Beginning on May 20, 2001, Plaintiff was subject to a one-year probationary period.

4. Supervisory Center Adjudications Officer Carolyn Nguyen, of Vietnamese national origin, was assigned as Plaintiff's first-line supervisor in Division II throughout Plaintiff's employment at CIS.

5. Nguyen acted as the only direct supervisor of Halik. Halik alleges that throughout her employment at CIS, Nguyen repeatedly directed anti-Filipino comments at Halik, such as, "You Filipinos are all alike."

6. Conflict arose between Nguyen and Halik at the onset of employment. The first incident involved the consolidation of Halik's two fifteen-minute rest breaks with her one-half hour lunch break into a single one-hour lunch break. Halik consolidated her lunch break without telling Nguyen but likely did not know that she needed to ask Nguyen for permission. Nguyen ultimately allowed Halik to combine her lunch breaks after informing Halik that she could not otherwise take a one-hour lunch break without consolidation. Halik contends that Nguyen said, "You Filipinos are all alike," when Halik asked to combine her breaks.

7. Overtime hours also became a point of contention between the parties in June. Halik did not know at the start of her employment that there were certain limits on the amount of overtime an employee could work. While Halik contends that her requests to work overtime were denied and that another Applications Clerk under Nguyen, Dipti Khambhaita (of Indian origin), was allowed all overtime requests, the evidence suggests otherwise. For example, according to pay sheets, Halik worked 15 hours of overtime in her first week and 17 hours of overtime in her second week. Further Deputy Director

|   |   |   |
|---|---|---|
| 1 |   | Christina Poulos testified that Halik and Khambhaita worked virtually the same hours |
| 2 |   | during Halik's first three pay periods. |
| 3 | 8. | Another incident occurred between Nguyen and Halik in the first week of June 2001 |
| 4 |   | regarding System Time and Attendance Reporting ("STAR") training.  Plaintiff requested |
| 5 |   | from Nguyen that she be able to attend this training.  When Nguyen asked another |
| 6 |   | supervisor, Rachel Wolcott, how to sign up for the June training, Nguyen learned that |
| 7 |   | Halik had already asked Wolcott to sign up for the training and had been told that she |
| 8 |   | would be unable to participate in it until July as all June spaces were full.  While |
| 9 |   | employees are not forbidden from speaking to other supervisors, Nguyen felt that the |
| 10 |   | request evidenced Halik basically trying to get two bites at one apple. |
| 11 | 9. | A conflict also occurred between Nguyen and Halik regarding the provision of telephones |
| 12 |   | for Nguyen's team.  On July 2, 2001, Nguyen directed Halik to canvass Nguyen's team |
| 13 |   | for telephone extension number preferences.  Nguyen then learned that Halik had already |
| 14 |   | requested a phone for herself from fellow employee Gregg Cotton and supervisor Howard |
| 15 |   | Dyson without informing Nguyen, though Halik denies making such a request.  Nguyen |
| 16 |   | took issue with the alleged request because Nguyen claims that she had advised Halik |
| 17 |   | regarding a certain priority order in relation to the provision of telephones. |
| 18 | 10. | Further, while Halik points out that the only other Applications Clerk in Nguyen's team |
| 19 |   | who had a telephone at his or her station on July 2, 2001, was Dipti Khambhaita, |
| 20 |   | Khambhaita testified that there was already a phone at her assigned workstation when she |
| 21 |   | began work and that she did not have to request one as a result.  Further, according to |
| 22 |   | Halik's testimony, Khambhaita started working at CIS prior to Halik by at least a few |
| 23 |   | weeks or a month. |
| 24 | 11. | As to fellow Applications Clerk Khambhaita, on June 28, 2001, Halik first brought |
| 25 |   | concerns to Nguyen that Nguyen was treating Khambhaita more favorably.  However, |
| 26 |   | Nguyen contends that Halik could not provide specific examples regarding how |
| 27 |   | Khambhaita was treated more favorably.  Instead, Nguyen told Halik that Nguyen tried to |
| 28 |   |   |

3

equally distribute interesting assignments between them and had told Khambhaita to include Halik in preparing the Time and Attendance even though Halik had not received the requisite training yet.

12. The situation between Khambhaita and Halik came to a head on July 20, 2001, when Khambhaita came to Nguyen indicating that Halik was improperly paying attention to Khambhaita's work and trying to compete with her. The three women met to discuss the matter later that same afternoon. After this meeting, there were no reoccurring issues between Khambhaita and Halik.

13. Other issues between Halik and Nguyen that allegedly occurred between the end of May and July 2001 include Nguyen denying Halik's request to attend PowerPoint and computer training, even though Halik was eventually allowed to attend such training, Nguyen denying Halik's request to attend a Work Recreation Association meeting, and Nguyen's claim that Halik falsely claimed to be working for another supervisor.

14. In July 2001, Plaintiff reported her issues with Nguyen to Union Representative Joe Nina.

15. On July 24, 2001, Nguyen and Assistant Center Director Barbara Velarde, of Hispanic national origin, met with Halik in an effort to enhance communication between the parties.

16. On July 26, 2001, Nguyen, Velarde, Halik, and Nina met to address the same concerns. Halik ultimately requested to be transferred to another supervisor, but Velarde denied the request, indicating that a transfer would not likely resolve any of the issues with Halik. While Halik indicates that at this meeting she told Velarde that Nguyen made anti-Filipino remarks, Velarde denies ever hearing this. Further, while Halik states that she told Nina about the anti-Filipino remarks, Nina's email to Nguyen setting up the July 26 meeting does not make reference to anti-Filipino remarks.

17. On August 26, 2001, Halik received a Time-Off Incentive Award of 4 hours time in recognition of her contribution to CIS.

18. On October 31, 2001, Halik was issued her Interim Performance Evaluation for the period

|   |   |   |
|---|---|---|
| 1 |  | of her entry on duty through October 31, 2001.  For the first element - Timeliness, |
| 2 |  | Personal Administration, File Maintenance, and Statistics - Halik received a "Fully |
| 3 |  | Successful" rating.  For the second element - Customer Service - Halik received an |
| 4 |  | "Excellent" rating.  Under remarks, Nguyen wrote, "Ms. Halik is performing all manners |
| 5 |  | described under the fully successful standard.  In addition, she has received positive |
| 6 |  | feedback from one of the supervisors for the extra effort provided as the facilitator during |
| 7 |  | PP16.  Ms. Halik continues to provide assistance in the updating of approved cases.  With |
| 8 |  | premium processing extended to the whole division, Ms. Halik has been called on to |
| 9 |  | assist other Applications Clerk to ensure cases are completed within processing time." |
| 10 |  | For the third element - Technical Knowledge and Professionalism - Halik received an |
| 11 |  | "Excellent," with Nguyen noting that Halik "contributed to team building by assisting |
| 12 |  | other team members in resolving work-related problems and issues."  She received an |
| 13 |  | overall rating of "Excellent."  Nguyen and Nguyen's supervisor Barbara Velarde signed |
| 14 |  | off on the evaluation. |
| 15 | 19. | On March 7, 2002, Supervisory Applications Clerk Connie Ness completed a |
| 16 |  | Performance Work Plan Quality Review Checklist of Halik's work.  She gave Halik a |
| 17 |  | 98% accuracy rating on files reviewed.  However, Ness noted on the Checklist that Halik |
| 18 |  | had not properly updated or refacs'd a number of cases.  Ness allegedly told Nguyen that |
| 19 |  | Halik became very defensive when told about the errors.  Nguyen then spoke to Halik |
| 20 |  | about the incident, and Nguyen contends that Halik also became very defensive and did |
| 21 |  | not respond positively to the constructive criticism. |
| 22 | 20. | On April 30, 2002, Plaintiff received her Final Performance Evaluation for the period of |
| 23 |  | May 20, 2001, through April 30, 2002.  She again received an overall rating of |
| 24 |  | "Excellent," with Nguyen and Velarde signing off on the Evaluation. |
| 25 | 21. | On the morning of May 7, 2002, another conflict occurred between Nguyen and Halik. |
| 26 |  | Another employee notified Nguyen of errors on Time and Attendance sheets completed |
| 27 |  | by Halik.  Nguyen then went to ask Halik to fix the errors.  While Nguyen contends that |
| 28 |  |  |

|     |     |     |
| --- | --- | --- |
| | | Halik reacted hostilely to the request to fix the sheets, Halik contends that Nguyen yelled at Halik about the errors, was otherwise rude and unprofessional, and made anti-Filipino remarks. Later in the afternoon at approximately 1:00 p.m., Halik went to Nguyen to reconcile the situation though Nguyen contends that Halik again became defensive and hostile at this time. |
| | 22. | On the same day, Nguyen reported the incident to Assistant Center Director Ron Johnson. |
| | 23. | Johnson convened a meeting with Nguyen and her fellow supervisors, Rachel Wolcott, Shirley Walker, and Howard Dyson to discuss whether Halik should be terminated. Though the other supervisors had not directly worked with or supervised Plaintiff, they indicated that they would not want to work with her without giving specific examples or reasons for their positions. |
| | 24. | On May 8, 2002, Nguyen and Johnson met with Deputy Director Christina Poulos to discuss Halik. |
| | 25. | Any problems with Halik's work performance were not identified to Poulos, and Poulos did not review Halik's performance evaluations prior to making the determination to terminate Halik, though Poulos indicated that she knew Halik had received "Excellent" performance ratings at that time. Poulos had no interaction with Halik prior to termination and had not personally observed interactions between Nguyen and Halik. |
| | 26. | On May 9, 2002, at the request of Johnson, Nguyen prepared a memorandum for Poulos recommending the termination of Halik. |
| | 27. | Poulos issued a termination letter to Halik on May 13, 2002. The letter indicated "Unprofessional Conduct," as opposed to any issues with work performance, as the reason for Plaintiff's termination with the following explanation: |

> You have continually displayed hostile reactions to counseling from management, and have demonstrated a poor attitude in interacting with Service supervisors. Rather than accepting statements aimed at improving your performance and behavior, you challenged the input

|   |   |   |
|---|---|---|
| 1 |  | and were reluctant to overcome your deficiencies.  You have also, on |
| 2 |  | numerous occasions, misrepresented statements of co-workers and |
| 3 |  | supervisors in efforts to receive favorable treatment in the |
| 4 |  | workplace.  By circumventing your chain of command, and in |
| 5 |  | misrepresenting the statements of other employees, the Service has |
| 6 |  | lost confidence in your integrity and trustworthiness.  You have also |
| 7 |  | directed inappropriate attention to the assignments of co-workers for |
| 8 |  | which you have no oversight, and have caused a disruption in the |
| 9 |  | workplace.  It has become apparent based on your conduct that you |
| 10 |  | cannot satisfactorily perform the duties required of the position for |
| 11 |  | which you were hired.  Despite several counseling sessions and |
| 12 |  | meetings you still continued to behave in a very unprofessional |
| 13 |  | manner. |
| 14 | 28. | During testimony, Poulos indicated that quality work performance does not override |
| 15 |  | conduct issues when deciding to terminate probationary employees.  Further, she |
| 16 |  | indicated that CIS has no requirement that the Deputy Director thoroughly investigate the |
| 17 |  | recommendations of trusted supervisors and managers when making a determination to |
| 18 |  | terminate a probationary employee.  Finally, she testified that she has terminated other |
| 19 |  | non-Filipino employees for the same type of alleged conduct issues associated with Halik. |
| 20 | 29. | Halik's separation was effective May 13, 2002, seven days before the expiration of her |
| 21 |  | probationary year. |
| 22 | 30. | The only witness directly testifying to hearing anti-Filipino remarks made by Nguyen, |
| 23 |  | other then Halik, is Marty De Leon who worked as an Immigration Information Officer at |
| 24 |  | CIS during Halik's employment.  Further, at trial, he only remembered hearing such |
| 25 |  | remarks on two occasions.  The comments he recalls hearing Nguyen make were to the |
| 26 |  | effect, "You fuckin Filipinos are all the same," and "Is this how you Filipinos do your |
| 27 |  | work....Is this how you all are?" |
| 28 |  |  |

31. Janice Lane, a friend of Halik's, worked as an Immigration Service Officer at CIS at the same time as Halik. She remembers Halik consistently crying during lunch due to Nguyen's treatment of Halik. While she testified that she could not remember if or when Halik told Lane that Nguyen was making anti-Filipino remarks, Lane stated that she is "sure" Halik made such comments to Lane.

32. Around the same time of Halik's employment with CIS, two Filipino employees were terminated for fraud because they were improperly adjudicating the applications of one of the employee's family members. A third Filipino employee who had participated in this incident was only given a thirty day suspension. Deputy Director Poulos testified that such fraud issues did not only occur with Filipino employees. For example, she indicated that similar fraud issues regarding the processing of applications had occurred with Vietnamese employees. Further, evidence was provided that the California Service Center employs a highly racially and ethnically diverse work force.

### III. Conclusions of Law

33  Plaintiff's claim for relief is an allegation of discrimination based on national origin. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual because of his or her national origin. 42 U.S.C. § 2000e-2.

34. The Act states in pertinent part: "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin" 42 U.S.C. § 2000e-2(a)(1).

35. There are four elements to establish a *prima facie* complaint of discrimination on the basis of national origin: (1) Plaintiff is a member of a protected class; (2) Plaintiff is qualified for her position; (3) Plaintiff was subject to an adverse employment decision; and (4) Plaintiff's removal was due to discrimination by Plaintiff's employer on the basis

|   |     |   |
|---|-----|---|
| 1 |     | of national origin by, for example, the employer treating similarly situated non-minority |
| 2 |     | employees differently. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. |
| 3 |     | 1817 (1973); *see also Id.* at n.13 ("The facts necessarily vary in Title VII cases, and the |
| 4 |     | specification above of the prima facie proof required from respondent is not necessarily |
| 5 |     | applicable in every respect to differing factual situations"). |
| 6 | 36. | While the first three elements of the *prima facie* case are not at issue, whether Plaintiff |
| 7 |     | Halik's removal was due to discrimination remains before the Court. |
| 8 | 37. | Plaintiff proffers two theories of liability to prove her claim for discrimination. |
| 9 | 38. | First, she contends that her national origin was the sole reason or a motivating factor in |
| 10|     | the decision to terminate her. *See* Ninth Circuit Manual of Model Jury Instructions: Civil |
| 11|     | § 10.1A (2007). While "sole reason" implies that discriminatory animus was the only |
| 12|     | reason for the employment decision, *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th |
| 13|     | Cir. 2002), a motivating factor is a factor that "played a part in the employment decision." |
| 14|     | *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) (plurality opinion) (overruled on |
| 15|     | other grounds). |
| 16| 39. | Plaintiff also contends that a hostile work environment lead to her termination. To |
| 17|     | prevail on a hostile work environment claim, Halik must show: (1) she was subject to |
| 18|     | slurs, insults, other verbal comments or intimidation based on her national origin; (2) the |
| 19|     | conduct was unwelcome; (3) the conduct was sufficiently severe and pervasive to alter |
| 20|     | her employment conditions and create a hostile and abusive environment because of her |
| 21|     | national origin; (4) Halik perceived the environment to be abusive; and (5) a reasonable |
| 22|     | person in Halik's position also would have perceived the environment to be hostile. |
| 23|     | *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995); *see also* Ninth |
| 24|     | Circuit Manual of Model Jury Instructions: Civil § 10.2A (2007).[1] |

---

[1] In the Final Pretrial Conference Order submitted by the parties and signed by this Court on December 1, 2008, Defendant contends that hostile work environment, rather than a separate theory of liability to prove wrongful termination, is a separate claim for relief. Defendant supports its argument by citing to Ninth Circuit Model Jury

9

1  40. Discriminatory intent can be shown both through direct and circumstantial evidence.
2      *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985).
3  41. As to direct evidence, while "stray remarks" are insufficient evidence of discrimination,
4      *see Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438-9 (9th Cir. 1990), repeated
5      derogatory remarks are strong evidence of intentional discrimination, *Mustafa v. Clark
6      County School Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998), especially depending on the
7      "context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson
8      Foods, Inc.*, 546 U.S. 454, 456, 126 S. Ct. 1195 (2006).
9  42. As to circumstantial evidence, Halik can show discriminatory intent by demonstrating
10     that similarly situated non-Filipino employees were treated more favorably. *Fonseca v.
11     Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). However, Halik has the
12     burden of demonstrating that the other employees are similarly situated in all material
13     respects. *Beck v. Union Food & Comm'l Workders Union, Local 99*, 506 F.3d 1037,
14     1038 (9th Cir. 2007).
15 43. If the Plaintiff makes an adequate *prima facie* showing, the employer must come forward
16     with a "legitimate, nondiscriminatory reason for the [adverse employment action],"
17     *McDonnell Douglas*, 411 U.S. at 802, but need not prove the legitimate reason by a
18     preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,
19     255, 101 S. Ct. 1089 (1981).
20 44. Plaintiff can prove that Defendant's alleged nondiscriminatory reason is mere pretext by
21     demonstrating that discrimination was the real reason for the adverse employment action
22     or that the employer's explanation is "unworthy of credence." *Burdine*, 450 U.S. at 256.
23 45. Ultimately, Plaintiff Halik has the overall burden of proving by a preponderance of the
24     evidence that a violation of Title VII has occurred. *Burdine*, 450 U.S. at 253.

---

Instructions. While the Court is sympathetic to Defendant's point, as the resolution of this issue does not change the outcome of this case and Plaintiff's complaint makes reference to a hostile work environment within the wrongful termination claim, the Court still considers the hostile work environment theory of liability.

46. As Defendant points out, "Dismissal from federal employment is largely a matter of executive agency discretion[,]" and this is particularly true during a federal employee's probationary period. *Toohey v. Nitze*, 429 F.2d 1332, 1334 (9th Cir. 1970).
47. The probationary period allows the federal agency to determine the fitness of the employee for a particular position and terminate the employee during the period if the employee fails to adequately demonstrate his or her qualifications for continued employment. 5 C.F.R. § 315.803.
48. A government agency can typically dismiss a probationary employee by notifying him or her in writing regarding why he or she is being separated and the effective date of the action. The writing must include "the agency's conclusions as to the inadequacies of [the probationary employee's] performance or conduct." 5 C.F.R. § 315.804.
49. Plaintiff Halik has failed to prove by a preponderance of the evidence that a violation of Title VII has occurred. That is, she has failed to demonstrate that she was terminated from her employment due to her Filipino national origin.
50. While there clearly appears to have been a personality conflict between Nguyen and Halik, Halik provides insufficient evidence for this Court to determine that Plaintiff's national origin was the basis for her termination under any of the appropriate legal standards.
51. Besides her own testimony, she provides minimal credible evidence that anti-Filipino remarks were made by Nguyen. Only De Leon testified to hearing any such remarks. Further, at trial, he only claimed to hear such remarks on two occasions. However, his credibility was cast in to doubt by Defendant's evidence that De Leon likely lied about receiving a Letter of Counseling while at CIS, had a series of discrepancies in his phone log records while at CIS, and possibly abused leave while employed by CIS. Similarly, witness Janice Lane, while stating that she is "sure" Halik told her that Nguyen made anti-Filipino remarks, did not actually testify that she remembered Halik telling her that anti-Filipino remarks were made and also did not claim to hear any such remarks herself.

52. Further, in conjunction with Plaintiff's witnesses, Defendant presented a plethora of witnesses indicating that they never heard Nguyen make anti-Filipino remarks to Halik, to anyone of Filipino national origin, or otherwise make disparaging remarks regarding any individual's national origin.
53. In fact, Nguyen appears to have been a fair supervisor to Halik, especially when reviewing the work performance evaluations of Halik completed by Nguyen. One would expect that if Nguyen harbored a discriminatory animus directed at Halik, Nguyen would not have given such high marks to Halik on those performance evaluations. Instead, Nguyen likely would have downplayed Halik's work performance if Nguyen was out to target Halik for termination.
54. Further, Plaintiff provides no physical documentation or any hard record made during her employment at CIS representing that Nguyen made anti-Filipino remarks.
55. Plaintiff also has not made an adequate showing that similarly situated non-Filipino employees were treated preferably to her such that an inference of discrimination is warranted. While there does appear to have been a conflict between Khambhaita and Halik, the record does not demonstrate by a preponderance of the evidence that Khambhaita was treated more favorably than Halik in such a manner leading to an inference of national origin discrimination.
56. Further, as stated above, federal agencies have wide discretion to terminate employees for work performance or conduct issues during their probationary period. While that discretion does not allow for a violation of law, Plaintiff has not shown that the agency's decision was mere pretext. Though Halik's performance evaluations were high, a series of conduct issues were identified by Nguyen that appear to be legitimate and nondiscriminatory. At a minimum, the conflicts between Nguyen and Halik do not appear to be based on national origin bias on the part of Nguyen.
57. While the Court is sympathetic to Halik's position in light of her high work performance, she again has not shown by a preponderance of the evidence that her national origin

entered into the decision-making process to terminate her under either of her proffered theories of liability. And the burden to show a violation of Title VII remains with her.

58. As a result, Plaintiff is not entitled to any of her requested relief.

59. Any conclusion of law erroneously labeled herein as a finding of fact shall be deemed a conclusion of law. Any finding of fact erroneously labeled herein as a conclusion of law shall be deemed a finding of fact.

60. All parties shall bare their own costs and attorneys' fees.

IT IS SO ORDERED.

DATED: February 24, 2009

_____
DAVID O. CARTER
United States District Judge